UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>$156,000,000 IN UNITED STATES )<br>CURRENCY BELONGING TO )<br>CRÉDIT AGRICOLE CORPORATE )<br>AND INVESTMENT BANK )<br>)<br>Defendant. ) | Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

**COMES NOW,** plaintiff the United States of America (the "Government"), by and through the Acting United States Attorney for the District of Columbia, pursuant to Title 18, United States Code, Section 981(a)(1)(A) to bring this verified complaint for forfeiture in a civil action *in rem* against $156,000,000 in U.S. currency belonging to Crédit Agricole Corporate and Investment Bank, ("CACIB").

### NATURE OF ACTION AND THE DEFENDANT *IN REM*

1. This civil action *in rem* is brought against the defendant property to forfeit it to the Government as authorized by 18 U.S.C. § 981(a)(1)(A). The defendant property is $156,000,000 in U.S. currency belonging to CACIB, which will be transferred to the United States Marshals Service by CACIB in conjunction with a Deferred Prosecution Agreement ("DPA") entered into by the United States and CACIB.

2. By this complaint, the Government seeks forfeiture of all right, title, and interest in the defendant property, which CACIB has agreed is forfeitable to the United States as a result

of its conspiracy to transmit or transfer funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, in violation of 18 U.S.C. §§ 1956(a)(2), 1956(h), with the intent to promote the carrying on of a conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706.

3. CACIB has agreed that the facts contained in the Information and Factual Statement filed with the DPA are sufficient to establish that this defendant property is subject to civil forfeiture to the United States.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

5. Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1355(b) and 1395(b) because the defendant property will be located within the District of Columbia.

## STATEMENT OF FACTS

6. As set out in more detail in the Factual Statement, attached as exhibit A and incorporated herein by reference, IEEPA authorized the President of the United States ("the President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declared a national emergency with respect to that threat. Pursuant to this authority, Presidents have imposed, enforced, and/or renewed sanctions on, among other countries, Burma, Iran, and Sudan.

7. From at least in or around August 2003 up through and including September 2008, CACIB, through its subsidiary in Switzerland, Crédit Agricole (Suisse) SA ("CAS"), and

its predecessor entities, Crédit Agricole Indosuez (Suisse) SA ("CAIS") and Crédit Lyonnais (Suisse) SA ("CLS"), violated U.S. and New York State laws by sending prohibited payments through the U.S. financial system on behalf of entities subject to U.S. economic sanctions. In an effort to evade detection by U.S. bank personnel as well as U.S. authorities, CAS and its predecessor entities knowingly, intentionally, and willfully concealed the sanctioned entities' involvement with these transactions. Consequently, U.S. and New York financial institutions processed transactions that otherwise should have been rejected, blocked, or stopped for investigation pursuant to regulations promulgated by OFAC relating to transactions involving sanctioned countries and parties.

8. Specifically, the conduct of CAS and its predecessor entities included, among other things:

   a. sending payments on behalf of sanctioned customers without reference to the origin of the payments;

   b. eliminating payment data that would have revealed the involvement of sanctioned countries with the specific intent to evade U.S. sanctions; and

   c. using alternative payment methods to mask the involvement of sanctioned entities, including the use of two payment messages, for payments involving sanctioned financial institutions that were sent to the United States.

9. By providing banking services on behalf of sanctioned entities, CAS and its predecessor entities:

   a. prevented detection by U.S. regulatory and law enforcement authorities of financial transactions that violated U.S. sanctions;

    b. prevented U.S. financial institutions from filing required reports with the U.S. government;

    c. caused false information to be recorded in the records of U.S. financial institutions;

    d. caused U.S. financial institutions not to make records that they otherwise would have been required by U.S. law to make; and

    e. caused false entries to be made in the business records of financial institutions located in the United States.

10. The conspiracy was successful, in part, because the massive number of lawful USD payments that CACIB processed made it easier for the unlawful payments to go unnoticed.

11. By providing these services to clients that were subject to U.S. sanctions or clients that were doing business with sanctioned entities, CACIB engaged in a conspiracy to violate IEEPA in violation of 18 U.S.C. § 371.

12. Moreover, by providing these services CACIB transmitted or transferred funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of an IEEPA violation, all in violation of 18 U.S.C. §§ 1956(a)(2), 1956(h).

13. CACIB has admitted to transmitting or transferring at least $312,000,000 of funds derived from a conspiracy to violate IEEPA beginning at least in or around August 2003 and continuing up through and including September 2008. The funds involved in these illegal IEEPA transactions passed through CACIB, where they were commingled with other CACIB funds.

14. During that same time frame, the overall bank services provided by, and assets owned by, CACIB exceeded $312,000,000. These separate funds facilitated and were involved in the illegal transmission and transfer of the $312,000,000.

15. CACIB has agreed to transfer $156,000,000 of its own funds, the defendant property, to the United States Marshals Service. CACIB has agreed to transfer another $156,000,000 of its own funds to the New York County District Attorney's Office ("DANY").

16. There is a substantial connection between the defendant property and the violation of 18 U.S.C. §§ 1956(a)(2), 1956(h). As CACIB has stipulated in the DPA, the defendant property was involved in the offending transactions. That is, the defendant property is not the $312,000,000 in funds that violated IEEPA, rather it represents a portion of the Company's assets which facilitated the $312 million in illegal transactions.

## CLAIM FOR RELIEF
## (18 U.S.C. § 981(a)(1)(A))

17. The Government re-alleges and incorporates by reference paragraphs 1 through 16 as if fully set forth herein.

18. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of section 18 U.S.C. § 1956, or any property traceable to such property is subject to forfeiture.

19. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include, among other things, offenses related to violations of IEEPA.

20. As a result, the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a violation of 18 U.S.C. §§ 1956(a)(2), 1956(h).

## REQUEST FOR RELIEF

**WHEREFORE**, the plaintiff United States of America prays that process issue to enforce the forfeiture of the *in rem* defendant-property; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendant property be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper, together with the costs and disbursements of this action.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

_____
Zia Faruqui, D.C. Bar No. 494990
Matt Graves, D.C. Bar No. 481052
Maia Miller, VA Bar No. 73221
Assistant United States Attorneys
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 252–7117 (Faruqui)
(202) 252-7762 (Graves)
(202) 252-6737 (Miller)
zia.faruqui@usdoj.gov
matthew.graves@usdoj.gov
maia.miller@usdoj.gov

## VERIFICATION

I, Jeffrey LaMirand, a Special Agent with the Internal Revenue Service, Criminal Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct.

Executed on this 19th day of October 2015.


*/s/ Jeffrey LaMirand*
Jeffrey LaMirand
Special Agent
Internal Revenue Service, Criminal Investigation